UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOVER D. JACKSON, | § § § |
| Plaintiff, | § § |
| v. | § Case # 1:18-cv-01294-DB § |
| COMMISSIONER OF SOCIAL SECURITY, | § MEMORANDUM DECISION § AND ORDER |
| Defendant. | § |

## INTRODUCTION

Plaintiff Glover D. Jackson ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 17).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 16. Plaintiff also filed a reply. *See* ECF No. 18. For the reasons set forth below, Plaintiff's motion (ECF No. 11) is **GRANTED**, and the Commissioner's motion (ECF No. 16) is **DENIED**.

## BACKGROUND

On April 18, 2015, Plaintiff protectively filed his application for SSI benefits, pursuant to Title XVI of the Act. Transcript ("Tr.") 12, 67, 125-30. Plaintiff alleged a disability beginning March 18, 2015 (the disability onset date) due to: heart condition, chronic kidney disease, hypertension, an abdominal aortic aneurysm, ischemic dilated cardiomyopathy and dyslipidemia. Tr. 12, 125, 153. Plaintiff's claim was denied initially on August 21, 2015, after which he requested

an administrative hearing. Tr. 12, 59-72, 76-82. Plaintiff's hearing was held in Buffalo, New York, on October 5, 2017. Tr. 12. Administrative Law Judge Sharon Seeley (the "ALJ") presided over the hearing. Tr. 12-26, 31-58. Plaintiff appeared and testified at the hearing and was represented by Jeanne Murray, an attorney. *Id*. Jay Steinbrenner, an impartial vocational expert ("VE"), testified via telephone. Tr. 12. On December 29, 2017, the ALJ issued a partially-favorable decision, finding that Plaintiff was not disabled prior to February 20, 2017, but he became disabled on that date due to a change in age. Tr. 12-26. On September 17, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her December 29, 2017 decision:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 416.971 *et seq.*);

2. Since the alleged onset date of disability, March 18, 2015, the claimant has had the following severe impairments: cardiomyopathy with implanted cardioverter defibrillator ("ICD"); coronary artery disease, status-post stent; abdominal aneurysm; chronic kidney disease and hypertension (20 CFR 416.920(c));

3. Since the alleged onset date of disability, March 18, 2015, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. Since March 18, 2015, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a),[1] with the following additional limitations. The claimant can stand and/or walk for 10 minutes at one time before sitting for 20 minutes. He can work in an environment with no exposure to extreme heat or cold, to wetness or humidity, or to smoke fumes or other pulmonary irritants and no exposure to hazards such as unprotected heights or moving machinery;

5. Since March 18, 2015, the claimant has been unable to perform any past relevant work (20 CFR 416.965);

6. Prior to the established disability onset date, the claimant was a younger individual age 45-49. On February 20, 2017, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Prior to February 20, 2017, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

4

finding that the claimant is "not disabled" whether or not the claimant has transferable job skills;

9. Prior to February 20, 2017, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.969 and 416.969a);

10. Beginning on February 20, 2017, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 416.960(c) and 416.966);

11. The claimant was not disabled prior to February 20, 2017 but became disabled on that date and has continued to be disabled through the date of this decision. His disability is expected to last twelve months past the onset date (20 CFR 416.920(g)).

Tr. at 12-26.

Accordingly, the ALJ determined that, based on the application for supplemental security income, protectively filed on April 18, 2015, Plaintiff has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on February 20, 2017. *Id*. at 26.

## **ANALYSIS**

Plaintiff argues that the ALJ failed to provide sufficient rationale for rejecting the opinion of consultative examiner Donna Miller, D.O. ("Dr. Miller"). *See* ECF No. 11-1 at 11. According to Plaintiff, the ALJ's consideration of Dr. Miller's opinion was unclear and inconsistent. *Id*. at 13. As such, Plaintiff argues, the ALJ had a duty to recontact Dr. Miller to clarify her opinion instead of relying on raw medical data and a vague or ambiguous medical opinion. *Id*. at 14.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

On July 17, 2015, Dr. Miller performed a consultative physical examination of Plaintiff. Tr. 445-48. Dr. Miller noted that Plaintiff was wearing a "LifeVest" (a wearable defibrillator). Tr. 445. Plaintiff reported his daily activities included watching television, reading, and performing personal care. Tr. 446. He denied doing any cooking, cleaning, laundry, shopping, or childcare. *Id*. Dr. Miller observed that Plaintiff walked and stood normally, could walk on his heels and toes, squatted the full range, and was able to rise from a chair and climb on and off the examination table without difficulty. Tr. 446. Plaintiff's chest, respiration, and heart rhythm were normal. Tr. 447. Plaintiff had normal muscle strength, intact motor function, and full range of motion throughout his body. Tr. 447. Dr. Miller diagnosed a history of heart attack, heart disease, hypertension, abdominal aortic aneurysm, kidney disease, and hypertensive retinopathy, and stated that Plaintiff should avoid "any exertional activity" due to his cardiac history. Tr. 448.

The Court agrees that the ALJ did not properly explain her rationale for the weight assigned to Dr. Miller's opinion, especially given Dr. Miller's opinion that Plaintiff should avoid all exertional activity. An exertional activity is "one of the primary strength activities (sitting, standing, walking, lifting, carrying, pushing and pulling) defining a level of work." SSR 83-10. At best, the ALJ's explanation is confusing in light of Plaintiff's multiple morbidities. The ALJ appears to have given Dr. Miller's opinion less credit because her examination was shortly after Plaintiff's heart attack and before he received his ICD. *See* Tr. 23. However, the ALJ fails to explain how a device to prevent sudden cardiac death leads to improved heart function.

Plaintiff's failing health culminated in a myocardial infarction in March 2015. Tr. 228-34. His discharge diagnoses included ischemic cardiomyopathy with an ejection fraction of 15-20%[2] and non-ST elevation myocardial infarction Tr. 228. The non-ST elevation myocardial infarction diagnosis was later assessed as ST-elevation myocardial infarction or STEMI. Tr. 356. He received a LifeVest and was instructed to use it at all times. Tr. 228-29. In a nutshell, the LifeVest was ordered to prevent sudden cardiac death.[3] During his March 2015 hospitalization, Plaintiff was diagnosed with a number of other cardiac-related issues, including sinus tachycardia, ventricular bigemny, biatrial abnormalities, prolonged QT interval, baseline wandering (wandering pacemaker) in what appear to be the inferior leads, and T wave abnormality. Tr. 272. In short, it is obvious that Plaintiff had severe cardiac disease, as established by arrythmias, irregular rate, ischemia and problems with repolarization and depolarization of the heart, not to mention infarction. *See* Tr. 273-274. Not surprisingly, he complained of shortness of breath after walking only 100 steps. Tr. 476. Based on Plaintiff's well-documented cardiac history, it is easy to understand why Dr. Miller stated no exertional activity.

About a year after his March 2015 heart attack, Plaintiff had another series of EKGs. The study on February 12, 2016 noted "ventricular premature complex(es) now present" and "ST (T wave) deviation still present." Tr. 495. Left ventricular hypertrophy was also noted. *Id*. During this time period, Plaintiff had an ICD (Implanted Cardiac Defibrillator) installed. Tr. 499. This was in addition to a prior installed pacemaker. Tr. 472-75, 479, 481, 483-503, 632-34. Even after

---

[2] A normal ejection fraction (the percentage of blood pumped out of a filled ventricle with each heartbeat) is 55-70 percent. The term "ejection fraction" refers to the percentage of blood that is pumped out of a filled ventricle with each heartbeat. *See Divincenzo v. Comm'r of Soc. Sec.*, No. 1:18-CV-662-DB, 2019 WL 3997312, at *4 (W.D.N.Y. Aug. 23, 2019) (citing *Townsend v. Comm'r of Soc. Sec.*, No. 11-CV-801 JG, 2011 WL 3648346, at *2, n.6 (E.D.N.Y. Aug. 17, 2011)).

[3] The LifeVest monitors the heart continuously and delivers a shock treatment if the patient goes into a life-threatening arrhythmia. Cleveland Clinic, https://my.clevelandclinic.org/health/treatments/17173-lifevest (last visited January 29, 2020).

these interventions, treatment notes depict that Plaintiff's ejection fraction was less than 30 percent for 90 days. Tr. 632. And in February 2016, he complained about still being fatigued since his heart attack one year prior. Tr. 635.

The ALJ allowed that Plaintiff could walk ten minutes before resting. Plaintiff testified that he could not walk very far at all. Tr. 43. The most he had ever done was one quarter of a mile. *Id*. He also testified that he could not walk or stand too long. Tr. 42. Although he testified that his condition was stable, he also testified it gets worse if he tries to exert himself. Tr. 47.

When the Court considers all of the relevant evidence in this case and applies the proper legal standards, substantial evidence exists that plaintiff is disabled within the meaning of the Act. Under well-established authority, the Commissioner's decision must be reversed if incorrect legal standards are applied in finding that plaintiff was not disabled. 42 U.S.C. § 405(g); *Schaal v. Apfel*, 134 F.3d, 496, 501 (2d Cir. 1998), 134 F.3d at 504 ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.") (internal citations and quotation marks omitted); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal.").

Further administrative proceedings or another hearing would serve no useful purpose. *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir.1999); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Frederick v. Barnhart*, 317 F.Supp.2d 286, 300 (W.D.N.Y. 2004); *Martinez v. Commissioner*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003) ("Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is

appropriate."). The record here has already been fully developed. Based on Dr. Miller's report and Plaintiff's abysmal medical history over a two-year period, little would be gained by remanding for further clarification from Dr. Miller. Plaintiff deserves better. This Court will rarely reverse and render, particularly since no one requested such. However, there is no meaningful rationale for not doing so in this case based on the evidence before the Court. Perhaps Plaintiff testified he could do more, but the only medical opinion before the Court said he should not. Therefore, remand is appropriate, but only for the calculation and payment of benefits. *Soto v. Barnhart*, 242 F.Supp.2d 251, 254 (W.D.N.Y. 2003) (remanding solely for calculation of benefits and not further proceedings where the ALJ's error was in interpreting and weighing treating physician evidence, not in failing to develop a complete record).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **DENIED**. The final decision of the Commissioner is reversed, and the case is remanded for calculation and payment of Social Security Supplemental Security Income benefits. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE